# UNITED STATES DISTRICT COURT
# DISTRICT OF MAINE

| | |
|---|---|
| DOLORES MCKENZIE, as Personal Representative for the Estate of Clarence McKenzie, <br><br> Plaintiff, <br><br> v. <br><br> UNITED STATES OF AMERICA, <br><br> Defendant. | ) ) ) ) ) ) ) ) ) ) ) ) ) <br><br> Docket No. 1:21-cv-00233-NT |

# ORDER ON DEFENDANT'S MOTION FOR PARTIAL SUMMARY JUDGMENT

Before me is the Defendant's motion for partial summary judgment. Def.'s Mot. for Partial Summ. J. ("**MSJ**") (ECF No. 22). For the reasons stated below, the motion is **DENIED**.

## RELEVANT FACTUAL BACKGROUND[1]

This suit was brought by the Plaintiff, Dolores McKenzie ("**Ms. McKenzie**"), as personal representative of the estate of her now-deceased husband, Clarence McKenzie ("**Mr. McKenzie**"). After suffering a stroke in early 2018, Mr. McKenzie began receiving cardiovascular care from various medical providers at the Togus VA

---

[1] These facts are drawn from the Defendant's Statement of Material Facts (ECF No. 30), the Plaintiff's Additional Statement of Material Facts ("**Pl.'s SOF**") (ECF No. 30), documents that are properly considered as part of the Record on this motion, and the Plaintiff's First Amended Complaint ("**Compl.**") (ECF No. 4).
  The Defendant denies certain facts in the Pl.'s SOF and asks that some facts be stricken as unsupported by a record citation. *See* Pl.'s SOF ¶¶ 6, 8, 10. In this case, the parties agreed at a hearing on December 15, 2021, to stay discovery of Togus-related claims pending resolution of this partial motion for summary judgment. S*ee* ECF Nos. 17–18. Given that agreement, and the narrow question at issue on this motion, I need not address the Defendant's denials or requests to strike at this stage.

Medical Center ("**Togus VAMC**" or "**Togus**"), including Dr. Daniel A. Soroff. Def.'s Statement of Material Facts ("**Def.'s SOF**") ¶¶ 1–3 (ECF No. 30); Pl.'s Statement of Additional Material Facts ("**Pl.'s SOF**") ¶ 2 (ECF No. 30).

On August 24, 2018, Mr. McKenzie was admitted to the Togus VAMC after experiencing sudden weakness in his right face, arm, and leg, along with slurred speech and aphasia. Def.'s SOF ¶¶ 4–5. On August 29, Mr. McKenzie was transferred to the West Roxbury VAMC, in Massachusetts, for a surgical procedure on his heart. Def.'s SOF ¶ 6. Mr. McKenzie was discharged from the West Roxbury VAMC on September 5 and was sent home on a shuttle bus to Maine. Def.'s SOF ¶¶ 11–12. Mr. McKenzie was picked up by his family and brought home at around 6:00 p.m. Def.'s SOF ¶¶ 12–13. He died just a few hours later, at approximately 12:45 a.m. on September 6. Def.'s SOF ¶ 14.

On January 14, 2019, the Plaintiff served the Department of Veterans Affairs (the "**VA**") with an SF-95 form, which is used to present claims under the Federal Tort Claims Act (the "**FTCA**"). Def.'s SOF ¶ 28; Decl. of Sara Aull Ex. A ("**2019 SF-95**") (ECF No. 19-1). In box 10 of the 2019 SF-95, the heading "wrongful death" is circled and in response to the Form's directions to "state the nature and extent of each injury or cause of death, which forms the basis of the claim," the form reads:

> Clarence W. McKenzie died from a cardiac event hours after being sent home from the West Roxbury VA after having his stress test cancelled the morning of his release from the hospital. . . . This was due to negligence by cancelling the stress test that could have detected what is now a wrongful death.

2019 SF-95, at 1. A narrative was attached to the 2019-SF 95 which offered further details of Mr. McKenzie's long bus ride from the West Roxbury VAMC to the Togus

2

VAMC. 2019 SF-95, at 2–3. The narrative, which appears to have been written by Mr. McKenzie's daughter, states that when Mr. McKenzie, a diabetic, arrived at the Togus VAMC after 6:00 p.m., he had not had insulin, food, or water since lunch. 2019 SF-95, at 2. It also indicates that he had no money to buy anything on the stops the bus made, and, because he had no shoes, he was forced to remain on the bus. 2019 SF-95, at 2. Mr. McKenzie's daughter indicated that Mr. McKenzie's feet were more swollen than when he went to West Roxbury and that one of his medications was missing. 2019 SF-95, at 2. The daughter contacted the VA to see what she and her sister should do, and she asserts that they were told to keep an eye on the swelling and pick up his medications the next day. 2019 SF-95, at 2. The 2019 SF-95 sought $1,500,000 for the wrongful death claim. 2019 SF-95, at 1. Neither the 2019 SF-95 form nor the attached narrative statement refers to care received by the decedent prior to September 4, 2018. Def.'s SOF ¶ 34; 2019 SF-95.

On May 4, 2021, Ms. McKenzie served what was labeled as an "amended" SF-95 on the VA. Def.'s SOF ¶ 37; Decl. of Sara Aull Ex. B ("**2021 SF-95**") (ECF No. 19-2). The 2021 SF-95 identified "the nature and extent of each injury or cause of death, which forms the basis of the claim," as follows:

> Clarence W. McKenzie died from a cardiac event hours after negligently being sent home from the West Roxbury VA. Additionally, the failure of Daniel A. Soroff, M.D., and Mr. McKenzie's family doctor, Dr. Chris Jenner, and other VA medical providers at Togus to assess Mr. McKenzie's cardiac status and his carotid disease, resulted in Mr. McKenzie's wrongful death.

3

2021 SF-95, at 2; *accord* Def.'s SOF ¶ 38. The narrative statement attached to the 2021 SF-95 largely reiterated the events described in the 2019 SF-95, but it contained the following additional paragraph:

> Beginning in January 2018 and continuing until Clarence McKenzie's death, Daniel A. Soroff, M.D., together with Mr. McKenzie's family doctor, Dr. Chris Jenner and other medical providers at the VA in Togus, were negligent in their failure to assess Clarence McKenzie's cardiac status and his carotid disease. Mr. McKenzie had multiple risk factors for underlying heart disease that should have been identified, prior to his death. Moreover, Dr. Sorroff [sic] and the VA providers were negligent in their failure to obtain a proper screening CTA or MRI of Mr. McKenzie's carotid artery prior to his second stroke in August 2018. Additionally, Dr. Sorroff [sic] and the VA providers were negligent in their failure to assess Mr. McKenzie's CAD disease pre-op with either a cardiac catheterization or CTA. Togus VA was negligent in telling Mr. McKenzie's family that he was ok to wait until the next day after learning that he was severely swollen after getting home that evening. As a direct result of the failure of the [sic] Dr. Sorroff [sic] and the VA medical providers, Mr. McKenzie suffered an unnecessary second stroke and required emergent surgery. Had Mr. McKenzie not required emergent surgery, he would have had the benefit of a planned non-emergent repair, which would have allowed Dr. Sorroff [sic] and other VA medical providers the ability to assess his cardiac status in a non-emergent manner. More likely than not, this would have led to the needed cardiac intervention for Mr. McKenzie, and he would have avoided the ultimate several heart attacks and the ultimate cause of his death. Dr. Sorroff [sic] and the VA providers were grossly negligent in placing Mr. McKenzie on a long bus journey, which further promoted his underlying congestive heart failure that was new and untreated at the time of the discharge and led to a likely metabolic acidosis with resultant increase in cardiac work and a fatal myocardial infarction and likely associated malignant cardiac dysrhythmia.

Def.'s SOF ¶ 39; 2021 SF-95, at 5–6. The 2021 SF-95 sought $1,500,000 for the wrongful death claim. 2021 SF-95, at 2.

On May 18, 2021, the VA took final action on both the 2019 SF-95 and the 2021 SF-95. Decl. of Victoria Bedore ("**Bedore Decl.**") Exs. A (ECF No. 25-1), B (ECF No. 25-2). In one letter, the VA denied the 2019 SF-95 on the ground that "the claim is

not amenable to administrative resolution." Bedore Decl. Ex. A. In a separate letter, the VA denied the 2021 SF-95 on the basis that the claim was filed outside the FTCA's two-year statute of limitations and was thus time-barred. Bedore Decl. Ex. B.

In August of 2021, Ms. McKenzie filed suit against the Defendant, the United States of America, pursuant to the FTCA. Am. Compl. ("**Compl.**") (ECF No. 4). The Complaint asserts a wrongful death claim (Count I), alleging negligence by Dr. Soroff at the Togus VAMC, Compl. ¶ 54, as well as negligence by medical care providers at the West Roxbury VAMC, Compl. ¶¶ 55–56. In addition, the Complaint asserts a claim of conscious pain and suffering (Count II). Compl. ¶ 59.

Now, the Defendant has moved for partial summary judgment, seeking to dismiss both counts of the Complaint insofar as "they are based on care provided by medical care providers at the [Togus VAMC], thereby limiting Plaintiff's claims to care provided by medical care providers at the [West Roxbury VAMC]." MSJ 1. The Defendant argues that the Plaintiff's claims arising from care provided at the Togus VAMC are time-barred because the 2019 SF-95 failed to provide notice of claims relating to the Togus VAMC and the 2021 SF-95 was untimely filed and thus barred by the FTCA's statute of limitations. MSJ 16.

## SUMMARY JUDGMENT STANDARD

Dismissal of FTCA claims under the FTCA's statute of limitations is appropriately considered "under Federal Rule of Civil Procedure 12(b)(6) (failure to state a claim upon which relief can be granted), or . . . pursuant to Rule 56 (summary

judgment)."² *Morales-Melecio v. United States*, 890 F.3d 361, 367 (1st Cir. 2018); *see also United States v. Kwai Fun Wong*, 575 U.S. 402 (2015). Summary judgment is appropriate when "there is no genuine issue of material fact and the . . . moving party is entitled to judgment as a matter of law. However, summary judgment is improper when the record is sufficiently open-ended to permit a rational factfinder to resolve a material factual dispute in favor of either side." *Morales-Melecio,* 890 F.3d at 368 (quotations and citations omitted). I must "view the well-pleaded facts in the light most favorable to the non-moving party, drawing all reasonable inferences in [her] favor." *Gray v. Evercore Restructuring L.L.C.*, 544 F.3d 320, 324 (1st Cir. 2008).

## DISCUSSION

"It is axiomatic that, absent an explicit waiver, the United States is safeguarded from suit in any court in accordance with its sovereign immunity." *Morales-Melecio*, 890 F.3d at 366. The FTCA provides a limited waiver of that sovereign immunity, allowing for damages claims to be brought against the United States for any "death caused by the negligent or wrongful act or omission of any employee of the Government while acting within the scope of his office or employment." 28 U.S.C. § 1346(b)(1). Yet, this limitation on sovereign immunity is

---

² Before 2015, the First Circuit interpreted "the timely filing of an administrative claim pursuant to §2401(b) as a jurisdictional prerequisite to vesting the district court with subject matter jurisdiction over an FTCA suit against the United States." *Morales-Melecio v. United States*, 890 F.3d 361, 367 (1st Cir. 2018). In *United States v. Kwai Fun Wong*, 575 U.S. 402 (2015), "the Supreme Court clarified that the FTCA's statute of limitations is nonjurisdictional." *Morales-Melecio*, 890 F.3d at 367. Accordingly, the First Circuit now treats FTCA statute of limitations claims as affirmative defenses. *Id.* As such, they are subject to Rule 12(b)(6) (as opposed to Rule 12(b)(1)) and summary judgment standards.

6

itself limited. Federal law provides that "[a] tort claim against the United States shall be forever barred unless it is presented in writing to the appropriate Federal agency within two years after such claim accrues." 28 U.S.C. § 2401(b).

Section 14.2 of the Code of Federal Regulations provides guidance on administrative claims filed pursuant to the FTCA. In relevant part, § 14.2(a) states:

> For purposes of the provisions of 28 U.S.C. 2401(b) . . . a claim shall be deemed to have been presented when a Federal agency receives from a claimant, his duly authorized agent or legal representative, an executed Standard Form 95 . . . accompanied by a claim for money damages in a sum certain for . . . death alleged to have occurred by reason of the incident . . . .

28 C.F.R. § 14.2(a). In addition, § 14.2(c) allows claimants who have properly presented their claims to make an amendment "at any time prior to final agency action." *Id.* § 14.2(c).

The parties agree on many of the pertinent facts. The Plaintiff does not take issue with the Government's contention that her claim accrued by October 25, 2018. Def.'s SOF ¶ 24. The Defendant concedes that the Plaintiff's 2019 SF-95 was timely filed. MSJ 2. And the parties agree that the Plaintiff's 2021 SF-95 was filed outside the FTCA's two-year limitations period. What the parties do *not* agree on is whether the 2021 SF-95 was nonetheless timely filed. The Plaintiff contends that her 2021 SF-95 was an amendment to her timely-filed 2019 claim allowed under 28 C.F.R. § 14.2(c), which allows for amendments prior to final agency action. Pl.'s Resp. in Opp'n to Def.'s MSJ ("**Pl.'s Opp'n**") 2 (ECF No. 27). The Defendant takes the position that the 2021 SF-95 was properly denied as time-barred because it was a new claim

7

covering a different "incident." Def.'s Reply to Pl.'s Resp. in Opp'n to Def.'s MSJ ("**Def.'s Reply**") 4 (ECF No. 31). Therein lies the rub.

At the outset, I note that none of the cases that the Defendant cites directly supports the contention that an amendment outside the limitations period that neither adds claimants nor changes the amount of damages is an impermissible material change. *See* Def.'s Reply 6–7 (citing *Manko v. United States*, 830 F.2d 831 (8th Cir. 1987), *Lee v. United States*, 980 F.2d 1337 (10th Cir. 1992), and *Henahan v. United States*, Civil Action No. 7:16-CV-00042, 2016 WL 4540882 (W.D. Va. Aug. 30, 2016)). Rather, these cases suggest that the primary question in evaluating the permissibility of submissions outside the statute of limitations period is whether such additions or modifications to the original claim are "material changes" that would "severely disrupt the settlement process" and "change the government's settlement calculus." *Manko*, 830 F.2d at 841; *Lee*, 980 F.2d at 1339 (affirming district court decision that adopted the Eighth Circuit's reasoning in *Manko*). If a secondary submission to an agency "alter[s] the basic calculation confronting the government in deciding whether to settle [the original claim]," then the submission should not be allowed as an amendment, for doing so "would frustrate Congress's intent in requiring [the prompt] presentation of administrative claims." *Manko*, 830 F.2d at 841; *see also Henahan*, 2016 WL 4540882, at *6.

Applying this general rule, courts have determined that amendments attempting to add new claimants, claims, and/or damages outside the limitations period were impermissible material changes that would disrupt the settlement

8

process. *See Manko*, 830 F.2d at 841; *Lee*, 980 F.2d at 1339; *Bowling v. United States*, Civil No. 5:11–cv–140–JMH, 2012 WL 5332376, at *3 (E.D. Ky. Oct. 26, 2012) ("[A] Plaintiff cannot amend a claim after the two year statute of limitations has passed to add entirely new claims or new parties."). And, conversely, at least one court has determined that § 14.2(c) *permits* amendments that merely set forth "additional facts" about an incident already timely presented to the proper government agency. *Wooding v. United States*, Civil Action No. 05-1681, 2007 WL 2071674, at *3 (W.D. Pa. July 13, 2007).[3]

Here, the Government does not allege that the 2021 SF-95 attempted to add new claimants[4] or increase the damages claimed. But, as the Government points out, the Plaintiff did add additional detail surrounding the circumstances of Clarence McKenzie's death, specifically that negligence on the part of Togus health care providers contributed to Mr. McKenzie's demise. The 2021 SF-95 seeks to go back months before Mr. McKenzie was transferred to West Roxbury for emergent surgery to the period when Mr. McKenzie was receiving cardiovascular care at the Togus

---

[3] The Defendant attempts to discount the persuasive value of *Wooding v. United States*, Civil Action No. 05-1681, 2007 WL 2071674 (W.D. Pa. July 13, 2007), asserting that "the court in the *Wooding* case engages in no analysis of the issue." Def.'s Reply to Pl.'s Resp. in Opp'n to Def.'s Mot. for Partial Summ. J. ("**Def.'s Reply**") 7 n.5 (ECF No. 31). Actually, the *Wooding* Court engaged in a very thoughtful analysis of the interplay between 28 U.S.C. § 2401 (the FTCA's statute of limitations provision) and 28 C.F.R. § 14.2(c) (the amendment regulation), as well as the meaning of the word "claim" as used in § 14.2(c), both of which are highly relevant concepts here. *See Wooding*, 2007 WL 2071674, at *3–4.

[4] I note that the 2021 SF-95 does appear to add some new claimants—Grace Powers, Christal Hurd, and Ronda Haskell—in its last paragraph. Decl. of Sara Aull Ex. B ("**2021 SF-95**"), at 6 (ECF No. 19-2). Though an amendment adding new claimants *would* clearly be time-barred, *see Manko v. United States*, 830 F.2d 831, 841 (8th Cir. 1987), the Defendant did not raise the issue of these additional claimants, perhaps because Powers, Hurd, and Haskell have not sought to be plaintiffs here. Accordingly, I need not address the issue.

9

VAMC. It asserts that if the Togus doctors had provided the necessary diagnostic testing, Mr. McKenzie could have avoided a second stroke in August of 2018 and that there would have been no need for him to have traveled to West Roxbury to seek emergent care. 2021 SF-95, at 5. In addition, it asserts that doctors at the Togus VAMC were negligent "in telling Mr. McKenzie's family that he was ok to wait until the next day after learning that he was severely swollen" after the bus ride back from West Roxbury. 2021 SF-95, at 5. The issue is whether these details constitute "material changes" or whether they are simply "additional facts" about the incident presented in the 2019 SF-95.

I begin with the information added in the 2021 SF-95 about the Togus VAMC staff advising the McKenzie family that they could wait and seek care the next day and conclude that this is clearly part of the same incident described in the 2019 SF-95. On that point, the 2021 SF-95 only offers the clarification that it was the *Togus* staff that gave the advice that things could wait.[5] On its face, this information seems like a mere additional fact, not a material change that would alter the Government's settlement calculus. Nor has the Government presented evidence to the contrary. On a motion for summary judgment, inferences are drawn in favor of the non-movant, and the movant bears the burden of showing it is entitled to judgment as a matter of law. Accordingly, as to this part of the amended claim, the motion for summary judgment is denied.

---

[5]     The 2021 SF-95 also clarifies that Dr. Soroff was involved in the decision to transfer Mr. McKenzie back to the Togus VAMC before the stress test. *See* 2021 SF 9, at 55 ("Dr. Sorroff [sic] and the VA providers were grossly negligent in placing Mr. McKenzie on a long bus journey . . . .").

10

The additional information about the care that was given to Mr. McKenzie at the Togus VAMC before he was sent to West Roxbury presents a closer question. The Defendant argues that the 2021 SF-95 "materially changed Plaintiff's claim" by "alleging new forms of malpractice by different providers at a different facility leading to additional harm." Def.'s Reply 6. Yet all of the cases cited by the Defendant in support of this contention are distinguishable. As I explained above, *Manko* and *Lee* held that the addition of new claimants, injuries, and/or damages were "material changes" not covered by § 14.2(c)'s allowance for amendment of claims. *See Manko*, 830 F.2d at 841; *Lee*, 980 F.2d at 1339. Here, the Plaintiff has not attempted to add a new claimant, a new injury, or any additional damages.

*Henahan v. United States*, Civ. Action No. 7:16-CV-00042, 2016 WL 4540882 (W.D. Va. Aug. 30, 2016) is also distinguishable. There, the District Court for the Western District of Virginia held that an amendment outside the limitations period that sought to add claims against health care providers at a separate VA hospital, not mentioned in the plaintiff's original claim, was time-barred. 2016 WL 4540882, at *3, 6. But, in *Henahan,* the record contained evidence about the status of the investigation into the original claim and the settlement process. *See id.* at *2. In fact, in *Henahan*, the Department of Veterans Affairs had actually denied the first administrative claim six months before the plaintiff sought to amend his claim. *See id.* at *3. Aside from blatantly violating the requirement of § 14.2(c) that amendments

11

be made *prior* to final agency action,[6] an amendment after final agency action clearly presents a severe disruption of the settlement process. Here, unlike in *Henahan*, the Plaintiff filed the 2021 SF-95 before final agency action. And, also unlike *Henahan*, the record here is completely devoid of any information about the Government's settlement process—for example, whether the Government had made any attempt to settle with the Plaintiff prior to receiving the 2021 SF-95. Overall, there are no facts in the record that suggest that the additional details set forth in the 2021 SF-95 would have disrupted or changed the Government's settlement calculus.

Finally, I am not persuaded by the Defendant's argument that allowing the Plaintiff's 2021 SF-95 to proceed would "[f]rustrate Congressional [i]ntent." Def.'s Reply 4. The FTCA limitation period's "obvious purpose . . . is to encourage the prompt presentation of claims," and courts "are not free to construe [the limitations period] so as to defeat [this] . . . purpose." *United States v. Kubrick*, 444 U.S. 111, 117 (1979). Moreover, the FTCA "waives the immunity of the United States and . . . in construing the statute of limitations, which is a condition of that waiver, [courts] should not take it upon ourselves to extend the waiver beyond that which Congress intended." *Id.* at 117–18.

That said, the Plaintiff did present her claims via the 2019 SF-95 well within the limitations period. And I am mindful that I am not free to rewrite, or simply ignore, a federal regulation that clearly allows for amendments at any time prior to

---

[6] It is unclear why the *Henahan* court failed to base its opinion on the fact that the amended claim was not filed until well after final agency action.

final agency action. *See* 28 C.F.R. § 14.2(c). While, as other courts have held, there are limits on the propriety of amendments outside the FTCA's statute of limitations, the Government has not shown that the type of amendment made here undermines the "prompt presentation of claims" or other policy concerns undergirding the limitations period to the same extent as the types of amendments found to be time-barred in *Manko*, *Lee*, and *Henahan*.

The Defendant raises the specter that the "Plaintiff's approach [risks] completely eviscerating the two-year limitations period." Def.'s Reply 5. But my holding here is grounded in the specific facts of this case: the Plaintiff's 2021 SF-95 adds no new claimants, injuries, or damages, and I have no information about the Government's settlement calculus. A different record might have warranted a different outcome. Regardless, I doubt that this ruling will result in the "complete[ ] eviscerati[on of] the two-year limitations period."

## CONCLUSION

For the reasons stated above, the Court **DENIES** the Defendant's motion for partial summary judgment.

SO ORDERED.

/s/ Nancy Torresen
United States District Judge

Dated this 9th day of June, 2022.

13